When the lawyers are ready we're happy to your argument in our third case United States v. Grant. Please be seated, it's your chair that's making a squeaky noise so would you be very quiet. Good morning your honors and may it please the court, Nicholas Anakis for Briceton Grant. This court should follow almost every other circuit in the country and adopt the common law doctrine of credit for time at liberty and it should follow the majority rule of those circuits in adopting a rule that awards credit when the government acted negligently. Our position is that test is best proposed by the third circuit in Vega v. United States. Well that is the standard that's used by every other circuit. The third circuit went out on a hoot of its own there, right? I would respectfully disagree with that your honor. I think the third circuit explains how it integrates a lot of what the other courts have done in terms of determining whether to award. What other circuit do you apologize to clarify it. I don't believe anybody after Vega has specifically adopted the Vega test. I do however believe that the Vega test follows previous precedent whether that be from White or Swope. Previous precedent within the circuit? Within other circuits. Adopting a bit here and a bit there. That's correct your honor. But the whole that the third circuit came up with is new creation, right? That's correct your honor. We do however believe that other circuits do award credit. How much time are we talking about? Ten days your honor. Does any other case involve that kind of time? No your honor. The majority of cases where this arises involves much more significant periods of time. But I would point the court to the Ninth Circus decision in Martinez which does mention if I could quote briefly from that, that's immaterial whether the convicted person has served one day or ten years of his sentence. If he is a witness he released thereafter, he is entitled to full day for day credit for the time that he was at liberty. And I believe that's consistent. Why wouldn't any formulation, and maybe you'll say some do, take into account the clean hands of the defendant and any efforts he made to get the mistake corrected? Your honor, I think the courts have pointed out for two things. The one would be, I believe the Arizona Supreme Court in Schwichtenberg discussed how it would be unreasonable to expect defendants to understand the circumstances of their erroneous ways. No, it wouldn't be at all. Somebody got a 15 day sentence and it's day three, it wouldn't be to say, what the heck? I'm getting ready to go. I get to go home today? Well your honor. That's not hard. That's not hard to figure. I would respectfully disagree your honor in terms of calculation for good time credit and just to give an example. Well it depends, but it depends. It would be in some circumstances, maybe in a 15 day sentence. How much good time is calculated on a 15 day sentence? There was no good time credit on the 15 day sentence. Right. But other circumstances however would arise because of that problem. Sure, if you had a sentence of 20 years, that's why it was this from you. That's correct. One, but additionally along with that rationally. Let me, I will bet you, I will bet you, most prisoners have a pretty doggone good idea when they don't have parole anymore. Certainly in federal crimes they have a good idea. 85% of what they're charged over a day, I mean over a year, they know it. Well your honor, I would once again respectfully disagree in terms of speaking to clients of mine trying to estimate their times of release. Maybe their lawyer didn't calculate 85% of, you get the calculation in federal court, you get that calculation at the time you go to prison, correct? Yes your honor, but that calculation changes once you arrive at prison based on a couple of factors. Depends on whether or not you lose good time. Or whether you participate in programs such as RDAP, whether there is a subsequent sentence reduction based on said amendments to the sentencing guidelines. So I think there is quite a few factors that could play. Yeah, but I tell you, no need to argue this too much, I guarantee most prisoners have a pretty good idea when they're getting out of jail. Well your honor, I think, at least all the hundreds I've dealt with have a pretty good idea. Well your honor, maybe my second point might go to this as well, which I think once again the Ninth Circuit in that same Martinez case discusses how it would be somewhat an opposite to essentially place the burden on the defendant to take himself to trial in that way. Can I just, before you move away from what I thought Judge Schiff's question was going to be, when the question began with the discussion of clean hands, the thing that I noticed about the district court's proposed five-factor test, in addition to just having a personal, inherent aversion to five-factor tests, was the fact that none of these five factors takes any note, considers the equities involved, it's the nature of the underlying offense, the length of the sentence, the character of the government error, the length of the erroneous period and how quickly the government tried to reacquire, and the degree to which the prisoner has resettled. None of it, there's no catch-all equitable consideration of, this guy kept trying to turn himself back in, doggone it, and they wouldn't let him. It does seem to me as though there should be some ability for the district court to say, this guy really did try to come back and tell you that he was inappropriately incarcerated. Absolutely, Your Honor. We believe that Mr. Grant took all the necessary steps, not only contacting counsel. That was my question too, before we got into discussion. Why wouldn't you take that in any common law rule that we would have gotten? Why wouldn't that be a factor you would take into account? I call it clean hands. Judge Duncan talked about equities, it's the same concept. If you look at it, it seems to me it's entirely different situations if one person, they say, it's clear the person knows he's not supposed to be here for another year, and they release him. And he says nothing. Or if somebody goes, I think you got the wrong guy. Gosh, I wish it were me, but I think you got the wrong guy, and they look at this and go, no, you listened to us, you're getting out of here today, you care about that. It seems to me that helps the second situation. Well, Your Honor, we obviously believe that would help Mr. Grant's case. But in this court, adopting a rule that would be applicable to cases beyond Mr. Grant's, I would return to my initial point, which is that there are confusing situations. And I think that, especially if you're talking about consecutive and concurrent time with different sovereigns and things of that nature, it can be quite confusing. And I think in those circumstances, it's difficult to tell exactly what steps a defendant or prisoner should have taken. That's something that the district court could take into consideration in the appropriate circumstance. It may not be a factor on certain facts, and it may be a factor in other situations. If you're going to have these factors, or if you're going to have factors, then it would seem to me need to be some room for the district court to assess, make individualized assessments that include a reflection of the characteristics of the defendant as well, as the nature of the government's error. That was my only point. Well, it was a question, Your Honor. On that point, I thought that the district court, I'm reading it, less than a week after the remedy, the mistake, I thought that it was your position that that was clearly erroneous factual finding, that in fact your client initiated the government's understanding that a mistake had been made. That's exactly correct, Your Honor. Where do we, I find that, you say that a lot. What record support is there for that? Your Honor, the only record support would be the assertions we made in the motion to the district court, to the magistrate judge, that were reasserted before the district court. Evidence was never taken on it because the government never disputed that fact. But there was no hearing to determine what exactly had occurred. So the district judge either ignored that fact, or this finding, this discussion that was less than a week after defendant's release, the probation official took prompt steps, is erroneous. That's correct, Your Honor. Our stance would be erroneous. They had not been made aware of it until counsel contacted the probation office after Mr. Grant contacted me. And you make another claim, I think, that the district court's suggestion that this was not his first violation of supervised release is incorrect. That's correct as well, Your Honor. Mr. Grant's violation, he only had one violation. To give the court the background on the case, Mr. Grant's original conviction was for possession offense. Following that, he was charged with state offenses, which formed the basis for a violation of probation. That was the only violation of probation until this circumstance is here, where after Mr. Grant was released, the probation officer, as a mechanism to get Mr. Grant back in the case. He violated probation, whereas actually they'd released him by error. That's exactly correct, Your Honor. Okay. So there's two arguably errors, factual errors in the district court's conclusion. On the other hand, this is a really small sentence, he's allowed to work and he only is serving this on the weekends. So what do we do with all that? Do we have to send it back to the district court? If it had been, if we could conclude that even with the factual findings being correct, that this was no abuse of discretion in rejecting your argument, what do we do? Well, Your Honor, if this court does adopt the five-factor test, which I would point out was not... Okay, but let's just, which five-factor test? The district court's five-factor test. We're not, we're adopting our own test, okay? And, but we recognize the legitimacy in the various factors that the district court talked about, but we adopt whatever test we have want of our own. What do we do with these findings of fact that are erroneous? Your Honor, I think you would still remand to the district court. Note that those factors were erroneous and allow us... Any other evidence that the district court would have been, would have not abused its discretion in refusing to adopt your position? Your Honor, I think at that point, a remand would still be appropriate because at the time of the hearing, we did not know what evidence to necessarily present. We presided this, prevented, or I'm sorry, presented this evidence to provide context to the case, but we did not, we were not given the opportunity to go through each of these five factors and supplement them. I don't even have any other evidence that you're, is lurking somewhere. Your Honor, I think that part of it obviously would be such as more personal characteristics of Mr. Grant going into the settlement. You don't get a do-over just because you could have done a better job the first time. The question is, if there's evidence in the record, there's sufficient evidence in the record for us to decide on the basis of what there is. Stripping out what the district court arguably got wrong, why, it would just be an, and found that the district court did not abuse its discretion, we could still affirm, could we not? No, Your Honor, I don't think you could affirm, partially because of what exactly happened mechanically with the sentence, and I think. What happened, what specifically are you talking about other than the fact of it being reimposed? As we discussed, I believe in the reply brief, 18 U.S.C. 3585A, which requires that, if I could read that briefly as well, a sentence to a term of imprisonment commences on the date the defendant is received in custody, awaiting transportation to or arrives voluntarily to commence service at a sentence, the official detention facility at which the sentence is to be served. And so therefore, even in imposing, adopting this test, the district court and the magistrate judge still legally, erroneously, modified the sentence without the authority to do so. Let me ask this, the sentence. I'm sorry, I just don't understand that answer, but Judge, that has a question coming, but just, oh, is it going to help me understand that answer? No, but we can tackle this if you want to go ahead and ask that question. Okay, so I don't understand what your point is. 3585A requires, says that a sentence begins once it immediately commences, and so therefore, having Mr. Grant go back to serve these additional days after his sentence would have terminated under 3585A is an illegal modification of the sentence. Could the 15 days count period be taken beyond? Yes, sir. But isn't that subsumed in the larger inquiry of whether he gets credit? Your Honor, I believe it's... Well, not always, but at least, well, maybe not always, but isn't, won't that, isn't that just a re-argument of your basic legal argument about credit for the time that he was missing and the government was negligent? No, Your Honor, we believe that it's one way in which the statutory structure reflects the doctrine. Oh, well, then it's, I mean, okay, so let me just say this, or ask, if we remanded, what additional evidence would be, would be brought forth? I believe that we would have additional evidence of resettlement, affidavits, partially from Mr. Grant and his family, what he has done with his work relationship. Well, but he maintains his work relationships. He only serves these days on the weekend. He received a considerable accommodation. Your Honor, I would disagree with that. Oh, excuse me? The district court allowed him to continue his employment and serve his sentence in a way that didn't interrupt his new job? Your Honor... You don't think that's an accommodation? Respectfully, no, Your Honor, I would offer this, if I realize my time is up, if I might answer the question. No, and you have, Judge Schitt has a question, so go ahead. Go ahead and answer this question first. One of the reasons clients specifically ask oftentimes to serve their sentence straight is because that allows them to be terminated afterwards and put these situations behind them. Remaining on incarceration, remaining on probation during that time while someone intermittently serves their sentence, could in fact be an additional burden. Wait, wait, wait, wait. But that's on the belief that he didn't have to serve any time. Right, that's just because you don't like the result. So you're assuming that the error in that response because, listen, if he wanted to serve, so you're saying this, if he has to serve any additional time, he wants to serve it consecutive days starting on a Monday. Well, Your Honor, that was Mr. Grant's original position. I cannot make that representation today. Really? So because he works on weekends? I mean, I don't really understand that. I believe my client's position was that he wanted to have this resolved the entire matter resolved in federal court completely as soon as possible and serving time intermittently. Why didn't he ask him to go? Did he say, Your Honor, put him back in jail right now? Well, Your Honor, because at the time we were arguing about whether he deserved credit. But I would point out to the court that— Well, that's just the point that we made to you. I would also add to the court that at the district court appeal, Mr. Grant did ask to be stepped back for the day to have that one day that would have been in dispute still resolved. I've had defendants when I was a district court judge. I tried to set up something for them. And on occasion they would go, Your Honor, be kind of mad. And I'd go, I thought I helped you. No, sir, I want to go to jail immediately. I said, I can grant that for you. And some people, really, some people would say, look, I want to do it right now. Actually, it's a supervised release violation. And he says, don't continue me. I'm sick of the government looking on my shoulder, giving me a hard time, and then I'm through with all of you. I accommodated him. And that's what your client said to the district court? No. I want to go right now? If I'm going to go, I want to go now. That was not at the district court. I believe that was at the original violation hearing, to ask for the 15 days and then termination. Right. That's what we sought at the original violation. Let me ask this. Judge Marsh read this to you. Less than a week after the defendant's release, U.S. Probation Officer Wilson took prompts steps to remedy the mistake. And you said that's clearly erroneous? Yes, Your Honor. Why is that clearly erroneous? She didn't? Whoever that was, he or she didn't take prompts steps to remedy it? No, Your Honor. I contacted Mr. Grant contacted me. I contacted the probation office earlier in that week. She took prompts steps. You see, it's not as clean as you would think. I'm just saying, in other words, is it true? You still may have an argument about other things, but I don't see how, unless you tell me otherwise, that that's clearly erroneous. I would add to the context for that statement is that normally probation office nor BOP becomes aware of these sort of situations so much after release when they're essentially closing out records. And so you just want to I think that's not clearly erroneous. What you want to say is an inference you might read from that doesn't really reflect the fact that my client really is the one that instituted the correction. That's correct, Your Honor. That doesn't make that clearly erroneous. Well, I would offer that the way the district court interpreted that as a factor against Mr. Grant made it clearly erroneous. Where did he do that? I believe in the district court opinion. I don't know, but you say in there he went since he didn't report. He gets sting for that? The district court did not at any point credit Mr. Grant for his proactive steps in reporting his release. It's an omission rather than a commission. Yes, Your Honor. No further questions at this time. I'd ask to reserve my remainder for rebuttal. Thank you. So does the government concede that this credit doctrine exists? Does it exist as a common law doctrine? The answer, would not concede that. Does it exist as something where if there's something beyond negligence, government are acting arbitrarily, government acting in contravention to law. I think in those circumstances the government concede that if someone is deliberate, if the U.S. Marshals, for example, take steps to deliberately release someone and then recollect them and then release them. Sir, the Seventh Circuit. That's right. That's as far as the government. But the government concedes there is such a doctrine recognized in federal courts. That's correct. To that extent. And we would say that it starts and ends with gross negligence at the least or some sort of affirmative government. Of course, we don't have to hold that in this case. For you to win, do we? That's correct. The government's position here is that the district court did not abuse its discretion. It assumed that there was a common law, a rule for credit at time of liberty, applied what Vega called the three paramount interests that should underlie such a rule, which is defendant's interest in resettlement, the need to avoid this kind of arbitrary action, and, of course, government and society's interest in having prisoners serve out their full sentences and then constructed an analysis, a non-exhaustive set of analysis of factors that allowed it to give life to those three paramount interests. And the court did not abuse its discretion in doing so. Does the government dispute the fact that the defendant initiated the government's actions in reincarcerating him? We do not dispute that at all. We do dispute the idea that the district court clearly erred in assessing that fact. What I believe the district court was getting at, and, again, starting from the premise that the issue here is government arbitrary conduct and the cases where the courts have found government arbitrary conduct or suggested that there might be arbitrary conduct is when the government or the marshals are put on notice that there's someone who has a detainer pending, for example, and the marshals do nothing, repeatedly do nothing, do nothing, do nothing. Now, I wouldn't concede that in this case necessarily had the probation officer been put on notice if there were what the delay would be where that would rise to arbitrariness. But I believe what Judge Ellis was getting at was as soon as the probation officer was aware, she took steps to bring the defendant back in. Is there any record evidence about that? We seem to have counsel's arguments about most of it. I believe that's in opposing counsel's brief that in terms of the timeline, let's see. He was mistakenly released from custody on my notes. I'm sorry. I'll give you the joint appendix sites. He was mistakenly released from custody on the 19th. That, of course, is not. What's the J site? So the 26, J26 is the docket that indicates that probation officer filed a petition on probation on February 25th, six days later. I believe that the date that the probation officer was informed was February 24th. So the next day after the probation officer was informed, a petition on probation was filed. If I'm incorrect on that, if it was not the next day, it was in a period of days. So look at J26 and I see the record, the 37, is that what you're talking about? Let's see. Only it has this petition in order on probation ordering that a warrant be issued. Now, let me get. I see JA51. This is not. It's the defendant's motion for credit and it says early the next week, defense counsel contacted the probation office to explain the situation and discuss how best to proceed that Friday. Probation office filed a petition, so it would be a couple of days. That's correct, and that's the opening brief, page four. Okay. Early next week means they assert that on Friday the petition was filed, so early next week was Tuesday or Wednesday or whatever. It's a few days. I'm not sure that the record makes clear what exactly the date is, but in terms of. It does refer to document 37. And I believe that's what the district court was saying, that he was not denying that. You think he just put that in for the purpose of showing that the government didn't lag. When they found that, they acted quickly. That's correct, and certainly there was evidence before the district court, and I believe there's no indication that the district court did not consider that Mr. Grant did bring this to the attention. Anywhere in any of this, I'm not saying there is, I'm just asking. Some idea that a jailkeeper can't, somehow the government can't be stopped because of that. If you go through normal procedure in the court and a judge imposes a legal sentence, it seems odd that that sentence somehow is a claim that can't be carried out because the government is stopped. I mean, is not a stop, I mean, rather is a stop because of a bureaucratic error. Is that gathered anywhere? In terms of gathered? In any kind of form that anybody applies. Even applying a form. Some of the circuits go there. Certainly, Vega, which we disagree with, goes there, and I believe the Ninth Circuit goes there. But our interpretation of every other circuit. The Ninth Circuit says you can't have any kind of good time credit? Oh, I'm sorry, that negligence is enough. No, no, no, I'm not saying that. I'm saying how does the government get stopped from giving the full sentence that has been regularly, legally imposed because of some mistake by somebody down the line. It's not the exact fit, but I do know anything that fits. It certainly used to be the law. But as to the federal FISC, you cannot have an agent or person, a bureaucrat, I don't mean that pejoratively, a person maybe explaining the program to somebody and going, yes, you can get funds for X. Yes, you can. And that second child is entitled to more money. And so the family goes out of anticipation and buys some extra clothes and some extra food. If the federal program doesn't authorize it, what the agent says just doesn't matter. And that's what I was kind of talking about. I know we're talking about good time credit, but it seems to me there is at least some consideration for how does a valid sentence handed down after the criminal procedure by a court subject to appeal and everything somebody wants to do, how does that somehow get reduced or removed? Because, like I say, a jailkeeper puts the key in the wrong cell door. And that's why the government urges the court to tread carefully before invoking common law here. And I believe that's what Judge Posner and Judge Lynch were getting at in Dunn from the Seventh Circuit and Espinoza from the First Circuit, and that Congress has spoken clearly on certain areas in terms of, for example, good time credit under 18 U.S.C. 3585. To reduce the sentence. That's right. Or under 3584, Congress has spoken about how multiple terms of imprisonment should be calculated when they're imposed. For example, at the same time, they're presumed to be concurrent. So the government's position here, there should be no doctrine of common law at all? That is our position. No. In response to my first question, you acknowledged that there was a common law doctrine, but that it was based on the finding that the government had been intentional. And I should clarify, I don't necessarily know that that would be a common law doctrine. I see. If there was, at some point, and without committing the government in a future case, at some point, if a U.S. marshal is arbitrarily releasing someone and collecting them and releasing them and collecting them, I think this Court's opinion in Hawkins would suggest that that would, at some point, arise to a due process violation. So I would say I don't think that the Court needs to conclude that there's a common law doctrine. Or conclude that there isn't. Or conclude that there isn't. But you're just making the claim there could be a way for somebody to get relief based on government conduct outside the common law. It could be due process. That's exactly right. In a case where you have truly egregious action, those... So then what would you have us do here? Just say nothing about it? Just say no abuse of discretion? I'd say that, at least for purposes of this case, the parties agree that we can assume, at least the government is willing to assume the existence of a common law doctrine and affirm on the basis of no abuse of discretion. It would be the same result as if the Court were to hold that there were none. Of course, we'd like the stronger position if we could and say that there isn't. The point is, because your point would be then, he's going to serve the full amount of time he should serve, was scheduled to serve, anyway. That's correct. How do you feel about the district court's test? I think that in similar cases as in Norrie, which is the southern district of New York case, it collects the most important factors that go to this paramount interest. Although I take your point, Judge Duncan, that it did not explicitly get to the equities of actions taken by the defendant that should count. I would say it didn't do so explicitly. I think factor three, which pointed out the timing of when the probation officer was notified and then how quickly the probation officer took action. As I said before, I think what the district court was getting at, mostly there was the probation officer didn't dilly-dally. But I think that certainly the facts were before the district court, and district court was aware that this was a defendant who had brought this to the probation officer's attention. Although I'd also point out this is not a defendant who brought that up immediately as he was being released. He was released. He reached out to his counsel. So this was not the case where that's- Well, how much time it left? I believe it was five days or something. I'm just saying- Well, but if you say the government acted speedily, he did too, you know. That's exactly right. I'm not trying to make more of it than is there, is all I mean. Would your position, if you have one, be that we don't have to articulate a test here because the district court did not abuse its discretion on these facts regardless? I think yes. I mean, to the extent that the court has disagreements with particular factors that the district court relied upon, I think that the court can make those disagreements clear, but that unless the court were to find that the district court would have applied the factors differently or that those factors would have made a difference, I think that the abuse of discretion- Or we could articulate a test. That's correct. Okay. Now, can I ask you about the other contention that they make, which the district court was clearly in error, and that was business about this was not his first violation of supervised release conditions. That was wrong, right? Not necessarily. So it's both what it said literally was true and what- Because of this violation. Okay. Accepting this violation, which he brought about himself, right? I mean, he told them about it, so they used the violation as the procedure to get him back to court. Is there some other violation that's lurking here? No. But I think what I would say is- But it sort of goes to the same point of not dealing with the equities. I would say it was literally accurate, but to borrow a phrase, also what the district court meant is clear, and that perhaps the district court was saying this was the second violation on supervised release, which though literally accurate, I take the court's point that the second violation wasn't really a violation. But I think what the rest of the court's analysis says, this was a repeat offender,  and that Mr. Grant had an initial conviction for PCP possession, and then four days later he was found with a charge or apprehended in connection with marijuana distribution. So from the district court's point of view, this was a repeat offender. I take the court's point that it would have been better to say that that was not a repeat violation on probation, because although technically correct, it's not really in substance what the court was getting at, but I'm not sure that I would agree that it was a clear error here. And I want to jump back really quick, Judge Motz, to you pointed out when I said, let's remember that Mr. Grant is not the defendant who benefits from the rule of immediately telling the jailer, hey, you're letting me out too early. And you rightly said, well, he brought it up a few days later. What I was trying to get at there inartfully was the other cases, where cases find either a due process violation or something getting close to arbitrary government conduct, it's what Your Honors were asking Mr. Xenakis about earlier, which is a case where a defendant is about to be let out, and he says, no, you got the wrong guy. I wish I could be getting out. Like what Shedd was talking about. That's right. And the court in White, for example, said that the defendant protested and was ejected from the penitentiary. I'm not saying that that would necessarily arise to arbitrariness. Good luck or bad luck. You make an argument, you lose the argument, but you lost, but you got it, you get free. I don't know what you call that. I don't know either. But I also agree that there's not a case that the government is aware of where a defendant was released as a result of mere negligence, and that defendant was also confused about his or her release date. So to get to Judge Shedd's point earlier, all the cases that are cited, and as far as the government is aware, there's no case where a defendant was erroneously released and was confused about his or her release date, which gets to the point that defendants are generally not confused about their release dates, except in cases where they protest and are ejected from the penitentiary, as in White. And the only reason for my question about a catch-all category was in the circumstances where it might be appropriate, just if we were looking at a test. And I think there are certainly – I think that does inform the test, and I think it would to the extent that the court does want to adopt a test. We'd urge it not to, but to the extent that it does, I think that could inform the test. And I would just say, to the extent that the court doesn't, that's built into the arbitrariness, in a sense. You think if we adopt a test, maybe this has been answered. If we adopt a test that's different than the test that the court applied below, even by adding the equity factor, do you think we would have to send it back for consideration under that, or we could just look at the record and say there's no evidence of that in this record? Although, as the other side said, what the heck? We didn't know we had to say anything about that. I think the court could make that harmlessness determination, particularly because, as I think I've – I hope I've answered the court's questions about the potential clear errors. I don't believe that the district court committed clear errors, in fact. And the fact, for example, that there might be more resettlement evidence now. What about an equities argument? I don't think – And he would want to say, I'm the one that self-reported. I think the court is aware of the equity issues that are in the record, as there are. If Mr. Xenakis has more to offer you on rebuttal, I'm sure he will. I would only point out about the resettlement. For example, what counts for resettlement isn't his resettlement efforts today. It's at the time back in March. Was there oral argument in this case? There was, both in front of Judge Buchanan, the magistrate judge, and then in front of Judge Ellis, the district court judge. And so an oral argument was the district court informed that the defendant had initiated these efforts to come back? I've said that a couple times, and now I hope that's accurate. I'm quite sure that's accurate. I don't have a JA site off the top of my head, but it was in the record, I believe, or at least represented by defense counsel at the time, and certainly not disputed by the government at any point. Okay. Thank you very much. Thank you. So was the district court aware that your client had initiated this? Yes, Your Honor, we would say that he was, based on my representations in the briefing. I would note for the court that the oral argument mostly focused on the applicability of the Vega test and whether the district court wanted to adopt that test, but we would say yes. So your position is you've been telling every judge who will listen to you, you just can't get anybody to give you guy credit by having done it? That's correct, Your Honor. And was the district court also informed that there was just one violation of probation? Your Honor, I would say yes, based on the posture of the case. I did not become aware when the district court used the term violation until the opinion was issued. That was not an issue at the oral argument. I would note, as this court looks at the district court's test for abusive discretion, the point we made about the totality of circumstances test, that none of it is really dispositive. Even the district court noted that in its own opinion, it was essentially completely in its discretion at the end. And so based on that, we don't think it would be workable in any way. And I think inherently it would qualify as an abusive discretion based on its own standard. Therefore, that's one reason we believe this court should adopt a more bright-line rule, and we believe that other courts have also followed suit in adopting a more bright-line rule. Well, but if we adopted, for example, the Seventh Circuit's bright-line rule, then there's no basis for reversal. Your Honor, I would disagree with that in terms of the facts of the Dunn case. Once again, in Dunn, the defendant was essentially only moved from custody once. Although they were at the same facility, they were moved from federal custody to state custody back to federal custody, which is essentially what's happened here. I would respectfully offer to the court that as the courts discuss this cat-and-mouse game, we're really only typically dealing with one release. And I think that makes sense based on the amount and the effect that simply being released once and reincarcerated can have on an individual. Do you have any other questions? I can't get over that poor guy complaining and getting ejected from prison. That's just astounding to me. Based on that, Your Honor, we ask the court to adopt the Vega test and reverse the district court. Thank you very much, Your Honor.
judges: Diana Gribbon Motz, Dennis W. Shedd, Allyson K. Duncan